**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.B., R.B.-1, and R.B.-2**

**No. 20-0182** (Kanawha County 19-JA-555, 19-JA-556, and 19-JA-557)

**MEMORANDUM DECISION**

Petitioner Mother F.H., by counsel Rick F. Holroyd, appeals the Circuit Court of Kanawha County's January 13, 2020, order terminating her parental rights to M.B., R.B.-1, and R.B.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Matthew Smith, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period and in denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner had substance abuse issues that negatively affected her ability to properly parent the child. Specifically, the DHHR alleged that petitioner indicated that she drove to Maryland once a month to participate in a Suboxone program but could not provide a valid prescription. Upon investigating a referral regarding the conditions of the home, the DHHR found petitioner to be "strung out" and "unwilling to cooperate with any services." Additionally, the DHHR alleged that the condition of the home was inappropriate, given that it had lacked running water for over a year and was littered with trash. Upon the DHHR's investigation, the parents would not initially allow workers into the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as R.B.-1 and R.B.-2 throughout the memorandum decision.

home. When workers were eventually allowed inside, they were not permitted to photograph the home's condition. Finally, the DHHR alleged that the family had a history of Child Protective Services ("CPS") intervention dating back to 2017 and was previously provided services related to substance abuse and the home's condition. Despite agreeing to participate in drug screening during these prior interventions, petitioner never submitted to a screen and further did not benefit from the services provided.

Following the petition's filing, petitioner waived her preliminary hearing. At that time, the circuit court ordered petitioner to participate in services, including adult life skills and parenting education, drug screens, and visits with the children. The circuit court also asked petitioner what would appear when she submitted to a drug screen as ordered, and she admitted that it would reveal marijuana and Suboxone, although she claimed to have a prescription for the latter. The circuit court also inquired if petitioner was prepared to attend long-term substance abuse treatment and petitioner responded that she was not.

In October of 2019, the circuit court held an adjudicatory hearing during which the DHHR presented testimony from a worker who investigated the home and testified consistently with the allegations in the petition. Petitioner testified and admitted that the home lacked running water but indicated that this was not an issue because she had access to a spring. Petitioner testified that running water was not a necessity and that her children were "never dirty." The circuit court found petitioner's "testimony not only not truthful, but disrespectful," after which it found that the DHHR satisfied its burden of proof. As such, the court adjudicated petitioner to be an abusing and neglectful parent. Following this determination, the guardian expressed to the court that petitioner indicated that she did not wish to exercise visitation with the children. The court inquired of petitioner and she confirmed that she did not wish to visit the children, despite the fact that the court warned her that failure to exercise visitation would not be beneficial in attempting to regain custody of the children. The circuit court also repeatedly inquired about petitioner's behavior during the hearing and asked if she was under the influence of some substance. Petitioner denied drug use and stated that she would produce a negative sample if screened.

In December of 2019, the circuit court held a dispositional hearing and noted that petitioner's drug screen following the adjudicatory hearing was positive for buprenorphine, norbuprenorphine, and a cocaine metabolite. A DHHR worker testified to the services in the home designed to remedy the issue, stating that CPS had been in the home since April of 2018 to address these ongoing issues. Despite the DHHR's efforts, the worker testified that the home's condition had not changed. The worker further testified to petitioner's noncompliance with services, including long periods during the proceedings during which petitioner was not in contact with the DHHR. Based on this evidence, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because she made no efforts to rectify the circumstances that led to the petition's filing. The court further found that termination of petitioner's parental rights was in the children's best interests. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

---

[2]The father's parental rights were also terminated below. The permanency plan for the children is adoption in their respective foster homes.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her a post-adjudicatory improvement period. According to petitioner, the issues for which she was adjudicated were primarily the result of a lack of income and she remedied those conditions. As such, petitioner asks that this Court remand the matter to permit petitioner to "enter an improvement period to address her drug issues." We find petitioner's argument unavailing.

To petitioner's first contention, we find that there is no evidence in the record that petitioner remedied any of the conditions for which she was adjudicated. As the circuit court found at the dispositional hearing, petitioner made no efforts to remedy the conditions of abuse and neglect. In support of her assertion that she remedied many of the conditions below, petitioner relies heavily on her own testimony from the adjudicatory hearing, while ignoring the fact that the circuit court found her testimony to be "not truthful . . . [and] disrespectful." As this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Because the circuit court found that petitioner's testimony lacked credibility, we find that petitioner is not entitled to relief on appeal in regard to any argument that is predicated on her testimony.

As to petitioner's assertion that she should have been entitled to an improvement period in order to address her substance abuse, we similarly find that the record does not support this argument. As we have previously established, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Further, we have held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and

convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Here, the record overwhelmingly shows that petitioner could not satisfy this burden, especially as it relates to an opportunity for petitioner to receive substance abuse treatment. At the preliminary hearing, petitioner flatly rejected an offer to obtain her placement in a long-term substance abuse treatment facility. Further, petitioner was repeatedly dishonest about her substance abuse despite her repeated positive drug screens. Given her refusal to acknowledge her substance abuse or need for treatment, granting petitioner an improvement period would have been futile. *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense."). Because petitioner could not satisfy the burden necessary for obtaining an improvement period, and because of her refusal to acknowledge her continued substance abuse and need for treatment, we find no error in the circuit court proceeding to disposition without granting petitioner an improvement period.

Further, this same evidence supports the circuit court's termination of petitioner's parental rights. Specifically, this evidence supports the circuit court's findings that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's welfare required termination. Even more importantly, the record shows that petitioner actively rejected visits with her children during the proceedings, which speaks directly to her inability to correct the conditions of abuse and neglect at issue. *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) ("[T]he level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently . . . ."). Petitioner does not challenge these findings on appeal. Because West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon such findings, it is clear that petitioner is entitled to no relief. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, we find no error in the circuit court's denial of post-termination visitation. Post-termination visitation is governed by the following:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among

other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). On appeal, petitioner makes no attempt to assert that the evidence established that continued visitation would be in the children's best interests. Instead, she relies on assumptions to assert that she was "a consistent presence in her children's entire lives" based on the fact that she testified that she stayed home with the children and was not alleged to have abandoned them. Again, petitioner's testimony below was found to lack credibility. Even more importantly, the record shows that petitioner disregarded her opportunity to visit the children during the proceedings and affirmatively expressed a desire not to exercise visitation, thereby demonstrating her lack of a bond with the children. Further, the DHHR offered testimony that post-termination visitation would not be in the children's best interest as it could interfere with their permanent placements. Accordingly, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 13, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5